UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OFFICE CREATE CORPORATION,

                              Petitioner,

            – *against* –

PLANET ENTERTAINMENT, LLC, and
STEVE GROSSMAN,

                              Respondents.

**OPINION & ORDER**

22-cv-8848 (ER)

<u>Ramos, D.J.</u>:

Office Create Corporation ("OC") commenced this action by filing a petition to confirm an arbitration award on October 17, 2022.  Doc. 1.  OC seeks a judgment confirming an arbitration award issued in its favor by the International Court of Arbitration of the International Chamber of Commerce ("the arbitration tribunal") on October 3, 2022.  *Id.*  The arbitration tribunal awarded OC:  (1) $200,000 in relation to unpaid payments stemming from a licensing agreement; (2) $20,913,200 in relation to profits; (3) ¥61,987,030 and $1,398,318 in relation to OC's legal costs; (4) $332,500 in relation to arbitration costs; (5) interest at a rate of 9% per annum; and (6) several forms of injunctive relief.  Doc. 4-1 at 82–83 ¶ 196; Doc. 1 at 12.  It held the Respondents jointly and severally liable.  Doc. 4-1 at 75 ¶ 177.  Respondents, Planet Entertainment, LLC ("Planet") and Steve Grossman, filed a cross-petition to vacate the award on November 14, 2022.  Doc. 24.

Before the Court are the parties' cross-petitions, Docs. 1, 24, as well as OC's renewed motion for an order of attachment and temporary restraining order, Doc. 35.  For the reasons stated below, OC's petition to confirm the award is GRANTED and Respondents' cross-motion to vacate the award is DENIED.  Additionally, OC's renewed motion for an order of attachment and a temporary restraining order is DISMISSED as moot.

## I.     BACKGROUND

### A.  Factual Background

OC is a Japanese corporation that develops video games, and it is the creator of a video game franchise called "Cooking Mama."  Doc. 4-1 at 5 ¶ 2.  Planet is an American video game developer.  *Id.* at 5 ¶ 3.  This dispute arises out of an August 2018 licensing agreement between OC and Planet.  As relevant here, Grossman is the chief executive officer ("CEO") of Planet; however, he was not a party to the licensing agreement in his individual capacity.  *See* Doc. 27-2.

In the agreement, OC licensed to Planet the right to make and sell certain video game products that incorporated OC's Cooking Mama game.  Doc. 27-2.  Specifically, the agreement provided that Planet would develop, publish, and sell a version of Cooking Mama that could be played on the Nintendo Switch—a hand-held gaming platform.  *Id.* at 2–3.  The agreement provided that OC was "entitled to reject any game design elements and recommend alternative design."  *Id.* at 3 § 4.2.  In consideration of the licensing rights, Planet agreed to pay OC $300,000 pursuant to a payment schedule, in addition to royalties.  *Id.* at 4 §§ 5.1, 5.2.  The parties agreed that they would have the right to immediately terminate the agreement in the event of a material breach that was not cured within thirty days after written notice.  *Id.* at 6 § 12.2.

As relevant here, the agreement provided that all disputes, controversies, and claims arising out of or in "relation to" the agreement would be settled by binding arbitration.  *Id.* at 7 art. 16.  The arbitration clause made clear that any award would be final and binding upon the parties.  *Id.*  The agreement had three signatories:  Steve Grossman on behalf of Planet Entertainment LLC, Toshio Fujioka on behalf of Planet Entertainment Asia, and Noriyasu Togakushi on behalf of OC.  *Id.* at 9.

On March 30, 2020, more than a year after the licensing agreement was signed by the parties, OC notified Planet of its termination on the grounds of material breach.  Doc. 4-1 at 26 ¶ 51.  Specifically, OC sent Planet a letter indicating that it had breached the

agreement by selling unapproved versions of Cooking Mama for the Nintendo Switch and Play Station 4—another gaming platform. *Id.*

OC served a request for arbitration on Planet and Grossman on April 6, 2021. *Id.* at 8–9 ¶ 12. Approximately two months later, on June 7, 2021, OC notified the arbitration tribunal that the parties had entered into a joint submission agreement and nominated an arbitrator.[1] *Id.*; *see also* Doc. 4-2. The submission agreement listed OC, Planet, and Grossman as parties.[2] Doc. 4-2 at 2. It indicated that the parties' disputes in relation to or in connection with the agreement, including "any question of arbitrability and/or jurisdiction," was to be finally resolved by arbitration before the tribunal. *Id.* at 2–3 ¶ 1. Additionally, the submission agreement noted that it was expressly agreed and understood by the parties that Grossman would "not waive or otherwise affect" his ability to "contest or assert the arbitrability of the claims against him." *Id.* at 3 ¶ 2. Grossman denied that he was a party to the licensing agreement and objected to the tribunal's jurisdiction over him. *Id.*; *see also* Doc. 5 at 8; Doc. 26 at 9.

### i. Arbitration

OC submitted its demand to the arbitration tribunal on June 7, 2021. Doc. 4-1 at 8–9 ¶ 12. Planet requested an extension of time to answer, and it notified the tribunal that it would be filing a motion to dismiss in relation to Grossman. *Id.* at 9 ¶ 13. Although Grossman agreed to join Planet's nomination of an arbitrator, Mr. Stephen S. Strick, he maintained his objection to the tribunal's jurisdiction over him. *Id.* Thereafter, on August 13, 2021, Planet submitted a statement of defense and counterclaim, and Grossman submitted a motion to dismiss. *Id.* at 9 ¶ 14.

The parties then submitted to the tribunal the list of issues to be determined in the arbitration. *Id.* at 9 ¶ 15. They included a number of questions regarding the alleged

---

[1] The submission agreement stated that it would not supersede or affect the terms of the parties' licensing agreement. Doc. 4-2 at 3 ¶ 5.

[2] Grossman signed the submission agreement in his individual capacity. Doc. 27-5 ¶ 32; Doc. 4-2 ¶ 3.

breach of the licensing agreement.  *See generally id.*  Additionally, as relevant here, the parties included the following issue:

> Whether [Grossman] is subject to the jurisdiction of the arbitral tribunal with respect to the claims against him in this arbitration?

*Id.*

The tribunal held a case management conference on November 3, 2021.  *Id.* at 11 ¶ 17.  Grossman maintained his objection to the tribunal's jurisdiction over the claims against him as an individual.[3]  *Id.* at 11–12 ¶ 17.

The tribunal then held a hearing regarding the arbitrability of the claims against Grossman on November 30, 2021.  *Id.* at 12 ¶ 19.  It issued an award on arbitrability on February 17, 2022, concluding that it had the authority to determine the issue of jurisdiction over Grossman.  *Id.* at 12 ¶ 20; Doc. 27-5 ¶¶ 33–36, 43.  It further found that Grossman was indeed a proper party to the arbitration,[4] and that it was appropriate to pierce the corporate veil in relation to him for the purposes of jurisdiction.  Doc. 27-5 ¶ 43.  In explaining its conclusion, the tribunal stated that, by entering into the submission agreement, Grossman "clearly and unmistakably agreed" to be bound by the tribunal's determination regarding "whether claims brought in relation to [the licensing agreement,] which he did not sign[,] could be asserted against him individually in this arbitration."  *Id.* ¶ 33.  It further stated as follows:

> For the avoidance of doubt, the Tribunal notes that it has pierced the corporate veil for jurisdiction purposes alone and has found that Mr. Grossman should be bound by the *arbitration agreement* in the Licensing Agreement.  As [OC]'s counsel acknowledged during the jurisdiction hearing, in order for Mr. Grossman to be bound by Planet's *other*

---

[3] The tribunal framed the issue as follows:  "whether the claims asserted by [OC] under the Licensing Agreement can be advanced against Mr. Grossman in this arbitration," and noted that, "for it to be permissible for [OC] to advance those claims in this forum against Mr. Grossman, he must be bound by the arbitration agreement in the Licensing Agreement."  Doc. 27-5 ¶ 28.

[4] The tribunal noted that it "proceeded on the assumption" that any references to whether OC's claims were "arbitrable" pertained to whether the tribunal's jurisdiction was proper.  Doc. 27-5 ¶ 19; *id.* ¶ 28 n.19 (noting that the tribunal treated Grossman's arbitrability objections as references to jurisdiction).

> *obligations* in the Licensing Agreement, [OC] will need to persuade the Tribunal that the appropriate standard set by New York law to establish liability has been met.

Doc. 27-5 ¶ 44 (emphasis in original).  In other words, when it issued the jurisdictional award, the tribunal did not opine on Grossman's liability pursuant to the breach claims.[5]

After the tribunal issued the jurisdictional award, it held an evidentiary hearing on liability pursuant to the breach allegations between May 16 and May 20, 2022.  Doc. 4-1 at 13 ¶ 23.  The parties submitted post-hearing briefs on June 17, 2022, *id.* at 13 ¶ 24, and the tribunal closed the proceedings on July 21, 2022, *id.* at 14 ¶ 26.

The final award was issued on October 3, 2022.  *Id.* at 84.  In relevant part, the tribunal concluded as follows:

a. Planet materially breached the Licensing Agreement by releasing the Switch and PS4 versions of the Game.

b. The Licensing Agreement was validly terminated by OC as of April 29, 2020.

c. Planet's corporate veil is properly pierced as against Mr. Grossman.  Mr. Grossman and Planet are jointly and severally liable to OC in connection with the relief granted in this Final Award.

d. The Respondents are ordered to refrain from passing off, inducing, or enabling others to sell or pass off any product as a Cooking Mama product unless such products are OC's or produced under the control and supervision of OC and approved by OC for sale under OC's Cooking Mama marks.

[ . . . ]

i. The Respondents are ordered to Pay US$200,000 to OC in relation to the unpaid milestone payments.

---

[5] The Respondents did not seek to vacate the jurisdictional award during the arbitration itself.  Rather they challenged it after the issuance of the final award in opposition to OC's petition in the instant litigation, by filing a cross-petition to vacate the award.  *See* Doc. 5 at 14; *see also* Doc. 26 at 21–22 (arguing that there is no merit to OC's suggestion that Grossman was obligated to move to vacate the jurisdictional award within ninety days of its issuance).

j.  The Respondents are ordered to pay US$20,913,200 . . . to OC representing Planet's profits.

k.  The Respondents are ordered to pay ¥61,987,030 and US$1,398,318 to OC in relation to OC's Legal Costs.

l.  The Respondents are ordered to pay US$332,500 to OC in relation to the Arbitration Costs.

m.  The Respondents' counterclaims are dismissed with prejudice.

n.  The Arbitration Tribunal awards simple interest at a rate of 9% per annum. [ . . . ].

*Id.* at 82–84 ¶ 196.

In addressing Grossman's arguments concerning his individual obligations under the agreement, the tribunal concluded that the evidence showed that he sufficiently dominated Planet, and it was appropriate to pierce the corporate veil as to him for the purposes of liability as well. *Id.* at 69 ¶ 161. In so doing, it emphasized that: Planet operated out of Grossman's home, *id.*; there were minimal corporate records and formalities maintained by Planet during the period at issue, and those that existed were signed by Grossman and his wife, *id.* at 69–70 ¶ 162; Grossman used Planet's funds for personal expenses[6] and for activities related to his other companies, *id.* at 70 ¶ 164; Planet transferred funds to the personal accounts of Grossman, his wife, and other family members, *id.*; Grossman used Planet's assets to satisfy a personal obligation from a settlement of an unrelated lawsuit in California, *id.* at 71 ¶ 165; Grossman intermingled Planet's assets among the businesses he controlled, *id.* at 71 ¶ 166; Grossman represented to investors of another, separate business of his that Planet would sub-license Cooking Mama to that entity, thus showing use of Planet's property by a "Grossman entity" that was not a party to the licensing agreement, *id.* at 72 ¶ 167.

---

[6] These included spa visits, reflexology treatments, acupuncture, and nail salon services. Doc. 4-1 at 70 ¶ 164.

The tribunal further concluded that substantial evidence showed that Grossman "could cause [Planet] to become undercapitalized virtually at will," *id.* at 73 ¶ 170, and the record supported a finding of "complete dominion by Grossman over planet," *id.* at 73 ¶ 171.  In regard to the wrongful nature of Grossman's dominion over Planet, the tribunal concluded that Grossman's "repeated assurances to OC that Planet would not release an unapproved version of Cooking Mama while at the same time securing [its] release" were "sufficient to constitute a wrong for veil piercing purposes."  *Id.* at 75 ¶ 176.  In sum, the tribunal found that OC satisfied its burden to show that Planet's corporate veil should be pierced as to Grossman, thereby finding that Grossman would be jointly and severally liable pursuant to the award.  *Id.* at 75 ¶ 177.

The Respondents failed to make any payments pursuant to the award, and this action followed shortly thereafter.  *See* Doc. 5 at 10.

### B.  Procedural History

OC filed the instant petition to confirm the arbitration award on October 17, 2022.  Doc. 1.  The next day, OC moved for an *ex parte* order of attachment and temporary restraining order, Docs. 12–13, which the Court denied without prejudice on October 20, 2022, Doc. 16.  Planet cross-moved to vacate the arbitration award on November 14, 2022, Doc. 24, and the parties completed briefing on their cross-petitions on December 5, 2022, Doc. 34.

Two months later, on February 2, 2023, OC renewed its application for an order of attachment and temporary restraining order.  Doc. 35.  The Court held a conference on February 7, 2023, and it set a briefing schedule on the applications.  *See* Min. Entry dated Feb. 7, 2023.  Briefing was completed on February 16, 2023.  Doc. 45.

## II.    LEGAL STANDARD

"Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected."  *D.H.*

*Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (citation omitted).  The Second Circuit has recognized that "an extremely deferential standard of review" is appropriate in the context of arbitral awards in order "[t]o encourage and support the use of arbitration by consenting parties."  *Porzig v. Dresdner, Kleinwort, Benson, North Am. LLC*, 497 F.3d 133, 139 (2d Cir. 2007).  "The arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case."  *D.H. Blair*, 462 F.3d at 110 (quoting *Barbier v. Shearson Lehman Hutton, Inc.*, 948 F.2d 117, 121 (2d Cir. 1991) (internal quotation marks omitted)).  Accordingly, "[o]nly 'a barely colorable justification for the outcome reached' by the arbitrator[ ] is necessary to confirm the award."  *Id.* (quoting *Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Emps. Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992)).

Under the FAA, arbitral awards "may only be vacated on extremely limited grounds."  *Ecopetrol S.A. v. Offshore Expl. and Prod. LLC*, 46 F. Supp. 3d 327, 340 (S.D.N.Y. 2014) (citing *Hall St. Assoc's, LLC v. Mattel, Inc.*, 552 U.S. 576, 588 (2008)).  The party moving to vacate an award bears "the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law."  *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003); *see Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010) (holding that a party seeking vacatur of an arbitrator's decision "must clear a high hurdle").  Under the FAA, a court may vacate an award:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).  In addition, as "judicial gloss" on these specific grounds for vacatur, the Second Circuit has held that "the court may set aside an arbitration award if it was rendered in manifest disregard of the law." *Schwartz v. Merrill Lynch & Co., Inc.*, 665 F.3d 444, 451 (2d Cir. 2011) (internal quotation marks omitted).

"When a party seeks confirmation of an arbitral award under the New York Convention, '[t]he court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.'" *Albtelecom SH.A v. UNIFI Commc'ns, Inc.*, No. 16 Civ. 9001 (PAE), 2017 WL 2364365, at *4 (S.D.N.Y. May 30, 2017) (quoting 9 U.S.C. § 207).  Article V of the Convention specifies several exclusive grounds upon which courts may "refuse to recognize an award." *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005); *see also CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 76–77 (2d Cir.), *cert. denied*, 138 S.Ct. 557 (2017).  These grounds are:

> (a) The parties to the agreement . . . were . . . under some incapacity, or the said agreement is not valid under the law . . . ; or
>
> (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or
>
> (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration . . . ; or
>
> (d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties . . . ; or
>
> (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, the award was made.

N.Y. Convention art. V(1).  Enforcement may also be refused if "[t]he subject matter of the difference is not capable of settlement by arbitration," or if "recognition or enforcement of the award would be contrary to the public policy" of the country in which enforcement or recognition is sought.  N.Y. Convention art. V(2).

## III.   DISCUSSION

The Court finds no basis upon which to vacate the award.  As set forth above, there exist a very limited set of circumstances in which the Court may do so, and none of those circumstances are present here.  The tribunal's award was the product of the parties' agreements to submit to arbitration—both the licensing agreement *and* the submission agreement.  *See* Doc. 27-2; Doc. 27-3.  Additionally, the parties, which were represented by counsel throughout the arbitration, actively participated in the proceedings before the tribunal.  And both the award on jurisdiction and the final award articulate detailed rationales for the tribunal's conclusions.  *See generally* Doc. 27-2; Doc. 4-1.

Nevertheless, the Respondents raise three main arguments in support of their petition to vacate the award, all of which relate to Grossman.  They argue that:  (1) the threshold issue of the arbitrability of the claims against Grossman has never been decided; (2) the tribunal applied the wrong standard when it concluded that it had jurisdiction over him; and (3) the tribunal's decision to pierce the corporate veil constituted a manifest disregard of the law.  Doc. 26.

These arguments are unavailing.  First, the tribunal clearly and unambiguously addressed the parties' dispute regarding the arbitrability of the claims against Grossman.  Indeed, it held a hearing to consider the parties' arguments regarding the dispute, and it subsequently issued detailed award specifically addressing the issue.  *See* Doc. 4-3.  Critically here, the tribunal's decision came after two key events:  Grossman signed the submission agreement in his individual capacity; and the parties agreed that the question of whether Grossman was subject to the decision-making authority of the tribunal, *with respect to the claims against him in the arbitration*, would be decided by the tribunal.

Doc. 4-1 at 9 ¶ 15; Doc. 27-5 ¶ 32.  Simply put, although Grossman preserved his objection regarding the tribunal's jurisdiction over him, he clearly agreed that the tribunal could and would consider that objection in its decision on that question.  *See* Doc. 31-3 at 9:24–10:24 (indicating that the Respondents agreed that the tribunal had authority to decide whether there was jurisdiction over Grossman).  The tribunal did so.  *See generally* Doc. 27-5.  That the tribunal did not rule in Grossman's favor does not change the fact that *all* parties agreed that the tribunal had authority to rule on the issue.

Nor did the tribunal err when it concluded that:  (1) it could properly exercise jurisdiction over Grossman and (2) it was proper to pierce the corporate veil with regard to liability.  As OC emphasizes, there are exceedingly limited circumstances under which courts may vacate an award on the basis that a tribunal showed a manifest disregard of the law.  Doc. 30 at 23 (quoting *MetLife Securities, Inc. v. Bedford*, 456 F. Supp. 2d 468, 472 (S.D.N.Y. 2006)).  The Second Circuit has characterized this as "a doctrine of last resort," noting that its use is limited to "exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent[.]"  *Duferco Int'l Steel Trading*, 333 F. 3d at 189 (2d Cir. 2003).  That is because "[g]enerally, the arbitrators' decisions must be granted great deference[.]"  *Bedford*, 456 F. Supp. 2d at 471–72 (citing *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004)).  Such relief is only available where arbitrators have ignored the applicable law.  *Wallace*, 378 F.3d at 189.  Respondents thus face a high burden here.

The Court cannot conclude that the tribunal showed a manifest disregard for the law—either on the jurisdictional question, or on Grossman's liability as an individual.  Indeed, a careful review of the record shows that the tribunal meticulously outlined and considered the applicable legal provisions under New York law, and it explained its rationales for finding jurisdiction over Grossman and piercing the corporate veil as to him.  Doc. 4-1; Doc. 27-5.  Given these circumstances, the Court cannot vacate the tribunal's decisions.  There are simply no grounds to refuse recognition of the arbitration

11

award under Section 207 of the Federal Arbitration Act, 9 U.S.C. § 207, or Article V of the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards.  The Court therefore grants the petition, and the tribunal's award is confirmed as to both Respondents.

Given the Court's decision in this regard, the Court dismisses OC's renewed application for an order of attachment and for a temporary restraining order as moot. Doc. 35.

## IV.    CONCLUSION

For the reasons stated herein, OC's petition to confirm the award is GRANTED and the Respondents' cross-petition to vacate the award is DENIED.  Petitioner' remaining motions are DISMISSED as moot, Doc. 35.

The Clerk of Court is respectfully directed to enter judgment in favor of OC pursuant to the tribunal's award.  The Clerk of Court is further directed to terminate the motions, Docs. 1, 24, and close the case.

It is SO ORDERED.

Dated:     September 11, 2023
           New York, New York

_____

EDGARDO RAMOS, U.S.D.J.