**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

OFFICE CREATE CORPORATION,

                Petitioner-Cross-Respondent,

      -against-

PLANET ENTERTAINMENT, LLC and
STEVE GROSSMAN,

             Respondents-Cross-Petitioners.

Civil Action No. 22-CV-08848-ER

**GROSSMAN'S MEMORANDUM OF LAW IN OPPOSITION TO PETITIONER'S
APPLICATION FOR AN ORDER THAT CERTAIN GROSSMAN-RELATED
<u>ACCOUNTS ARE NOT EXEMPT FROM OC'S COLLECTION EFFORTS</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ............................................................................................................................. 2

    I.      OC Has Not Established Proper Service Of The Restraining Notice ............................ 2

    II.     OC's Claim is Barred by ERISA ................................................................................. 3

          A.    ERISA Standard ................................................................................................ 4

          B.    The Retirement Plan Is An ERISA-Qualified Plan .......................................... 5

          C.    CPLR § 5205(c)(5) Is Preempted By ERISA ................................................... 7

    III.    The Objection Should Be Denied Because: (i) OC Has Failed to Comply
          with Procedural Requirements and It Has Not Served Appropriate
          Representatives of the Retirement Plan; and (ii) Disposition of Third Party
          Rights Involving Non-Debtors and Other Third Parties Is Not Appropriate
          in the Present Action, To the Extent that OC Seeks the Release of Funds
          Held by Third Parties ................................................................................... 14

    IV.    Grossman Denies OC'S Allegations Of Fraud .......................................................... 17

CONCLUSION ........................................................................................................................ 18

i

**TABLE OF AUTHORITIES**

**PAGE(s)**

**CASES**

*In Re Bissell*
    (255 B.R. 402 (Bankr. E.D. Va. 2000)) ...............................................................11

*Boggs v. Boggs*,
    520 U.S. 833 (1997)...............................................................................................11

*Cal. Div. of Labor Standards Enf't v. Dillingham Constr., N.A.*,
    519 U.S. 316 (1997)............................................................................................7, 8

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
    467 U.S. 837 (1984)...............................................................................................4

*Ditto v. McCurdy*,
    90 Haw. 345, 978 P.2d 783 (1999) .......................................................... *passim*

*Egelhoff v. Egelhoff*,
    532 U.S. 141 (2001)...............................................................................................7

*Ellis Nat'l Bank v. Irving Tr. Co.*,
    786 F.2d 466 (2d Cir. 1986)............................................................................11, 12

*Gen. Motors Corp. v. Buha*,
    623 F.2d 455 (6th Cir.1980) ...........................................................................9, 10, 11

*Guidry v. Sheet Metal Workers Nat'l Pension Fund*,
    493 U.S. 365 (1990)...................................................................................... *passim*

*Hoult v. Hoult*,
    373 F.3d 47 (1st Cir. 2004).....................................................................................4

*Kickham Hanley P.C. v. Kodak Ret. Income Plan*,
    558 F.3d 204 (2d Cir. 2009)....................................................................................9

*Mackey v. Lanier Collection Agency & Service, Inc.*,
    486 U.S. 825 (1988)............................................................................................8, 12

*In re Mann*,
    134 B.R. 710 (E.D.N.Y. 1991) ........................................................................12, 13

*Motorola Credit Corp. v. Standard Chartered Bank*,
    24 N.Y.3d 149 (2014)..........................................................................................1, 3

*Northwest Airlines, Inc. v. Roemer*,
    603 F. Supp. 7 (D. Minn. 1984) ............................................................................9

*Shaw v. Delta Airlines, Inc.*,
    463 U.S. 85 (1983) ......................................................................................7, 8

*Tenneco, Inc. v. First Virginia Bank of Tidewater*,
    698 F.2d 688 (4th Cir. 1983) ...............................................................................9

*VFS Fin., Inc. v. Elias-Savion-Fox LLC*,
    73 F. Supp. 3d 329 (S.D.N.Y. 2014) ...............................................................13, 14

## STATUTES AND RULES

29 U.S.C.S. § 1001 et seq. ..........................................................................................2

29 U.S.C.S. § 1002(2)(A) ..........................................................................................5

29 U.S.C.S. § 1002(3) ................................................................................................5

29 U.S.C.S. § 1003(a)(1) ...........................................................................................5

29 U.S.C.S. § 1144(a) ..............................................................................................14

29 U.S.C. § 1056(d)(1) ........................................................................................4, 14

29 U.S.C. 1144(a) .................................................................................................4, 7

CPLR Art. 52 ........................................................................................................2, 3

CPLR § 5205 .....................................................................................................13, 14

CPLR § 5205(c) ....................................................................................................4, 8

CPLR § 5205(c)(2) ..................................................................................................10

CPLR § 5205(c)(5) .......................................................................................... *passim*

CPLR § 5222 ............................................................................................................2

Employee Retirement Income Security Act § 514(a) ...................................................7

Haw. Rev. Stat. § 651-124 .....................................................................................9, 10

Internal Revenue Code § 401(a) ............................................................................ *passim*

Internal Revenue Code § 408 ..................................................................................14

Treas. Reg. § 1.401(a)-13(c)(1)(ii) (2017) ..................................................................4

Steve Grossman ("Grossman"), by and through his undersigned counsel Pryor Cashman LLP, respectfully submits this Memorandum of Law in Opposition to the Objection to Grossman's Exemption Claim filed by Office Create Corporation ("Petitioner" or "OC") seeking a finding that five ERISA-qualified retirement plan bank accounts located at Merrill Lynch[1] and established in connection with the adoption and operation of the Defender Care dba E-Partners LLC Defined Benefit Plan (the "Retirement Plan"), each of which was identified by Grossman in response to OC's original information subpoena, are not protected from OC's efforts to collect on the judgment that OC obtained against Grossman, and therefore may properly be restrained by OC (the "Application").  Respectfully, for the reasons set forth herein, the Objection to Grossman's Exemption Claim should be overruled in its entirety.

## PRELIMINARY STATEMENT

As set forth in the accompanying declaration of Jamie M. Brickell, counsel for Grossman, there are a number of bases upon which the relief sought by OC should be denied.

First, it appears from the Exemption Form, annexed to the Labgold Declaration as Exhibit A, that OC sent the restraining notice to Merrill Lynch in *New York* rather than in Connecticut, where the accounts in question are located.  (Grossman is domiciled in Connecticut.)  This is significant because, under New York's "separate entity rule" (*see Motorola Credit Corp. v. Standard Chartered Bank*, 24 N.Y.3d 149 (2014)), if the restraining notice was sent to Merrill Lynch in New York, it would have been improper for Merrill Lynch to restrain accounts maintained at a Connecticut branch.  Absent proof of proper service of the restraining notice on

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the accompanying Declaration of Jamie M. Brickell dated January 3, 2024 (the "Brickell Declaration").

Merrill Lynch *in Connecticut* in accordance with CPLR Art. 52 of the CPLR and the "separate entity rule," the restraining notice is not effective as against the Connecticut-held Accounts.

Even assuming *arguendo* that the separate entity rule does not apply, CPLR § 5205(c)(5) is preempted by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C.S. § 1001 et seq., which expressly provides that retirement plan funds cannot be attached or garnished to pay a judgment creditor.  Thus, as explained below, this Court should deny the relief sought herein by OC.

Finally, it should be clear that the Application is a procedurally improper attempt by OC to "direct[ ] the release of Funds in the Merrill Accounts to Petitioner in partial satisfaction of this Court's September 11 Judgment." (Objection at p. 7)  In this case, neither the administrator of the Accounts nor Merrill Lynch are parties to the Objection.  On this basis as well, the relief requested is inappropriate.

For all of these reasons, the Application should be denied in its entirety.

## ARGUMENT

### I.    OC Has Not Established Proper Service Of The Restraining Notice

CPLR § 5222 provides that a judgment creditor, such as OC, shall have the right to send restraining notices to any party who possesses property in which Grossman, as a judgment debtor, has an interest.  However, it is unclear from the Exemption Form, which is at the heart of this motion, whether OC sent the restraining notice to Merrill Lynch in Connecticut, where the Accounts are located, or to Merrill Lynch in New York. The return address on the form, annexed to the Labgold Declaration as Exhibit A, is Merrill Lynch at "One Bryant Park, New Yo[r]k, NY 10036."

The foregoing is significant because, under New York's "separate entity rule," service of a restraining notice on a bank's New York branch is not effective to restrain assets held in out-of-state branches of the same bank. *See e.g., Motorola Credit Corp.*, 24 N.Y.3d 149 (holding that the "separate entity rule" precludes a judgment creditor from ordering a garnishee bank operating branches in New York to restrain a debtor's assets held in foreign branches of the bank). As explained by the Court of Appeals:

> The separate entity rule . . . provides that even when a bank garnishee with a New York branch is subject to personal jurisdiction, its other branches are to be treated as separate entities for certain purposes, particularly with respect to CPLR . . . article 52 post-judgment restraining notices and turnover orders. In other words, a restraining notice or turnover order served on a New York branch will be effective for assets held in accounts at that branch but will have no impact on assets in other branches.

*Id.*, 24 N.Y.3d at 158-59.

Here, OC has not established that the restraining notice was properly served on Merrill Lynch in Connecticut, while the notice itself indicates that it was served on Merrill Lynch in New York. In the absence of proof that the restraining notice was properly served on Merrill Lynch in accordance with the CPLR Art. 52 and the "separate entity rule," the restraining notice "will have no impact" on Connecticut-held assets held in which Grossman has may an interest.

## II.     OC's Claim is Barred by ERISA

Through the Application, OC seeks an Order from this Court that funds held in certain ERISA retirement plan accounts that are tax-qualified under § 401 of the United States Internal Revenue Code of 1986, as amended (the "Code"), for the benefit of an individual (Grossman), may be invaded and ultimately seized[2] by OC as a judgment creditor of Grossman. Under New

---

[2] The only issue before the Court presently is the propriety of the exemption in the Retirement Accounts as between Grossman and the Petitioner, as opposed to any third party action related to the Retirement Plan.

York law, like other jurisdictions, such funds generally are exempt from execution by a creditor.

*See* CPLR § 5205(c).  OC then relies upon an exception to that exemption under New York Law:

> Additions to an asset described in paragraph two of this subdivision shall not be exempt from application to the satisfaction of a money judgment if (i) made after the date that is ninety days before the interposition of the claim on which such judgment was entered, or (ii) deemed to be voidable transactions under article ten of the debtor and creditor law.

CPLR § 5205(c)(5).  However, the application of CPLR § 5205(c)(5) to the Retirement Plan or the Accounts is preempted by ERISA, which protects the Accounts in situations such as those now before the court.

### A.  ERISA Standard

ERISA bars any effort by a judgment creditor, like OC, to attach the assets of a tax-qualified retirement plan. ERISA's broad preemption clause mandates that the provisions of ERISA "**shall** supersede any and all State laws insofar as they may now or hereafter relate to any [covered] employee benefit plan . . . ." 29 U.S.C. § 1144(a) (emphasis added). To qualify, a retirement plan must "provide that benefits provided under the plan may not be assigned or alienated."  29 U.S.C. § 1056(d)(1). The terms "assignment" and "alienation" are defined to include "[a]ny direct or indirect arrangement . . . whereby a party acquires from a participant or beneficiary a right or interest enforceable against the plan in, or to, all or any part of a plan benefit payment which is, or may become, payable to the participant or beneficiary." Treas. Reg. § 1.401(a)-13(c)(1)(ii) (2017); *see Hoult v. Hoult*, 373 F.3d 47, 54–55 (1st Cir. 2004) (anti-alienation regulation entitled to deference under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)).

ERISA applies to any "employee benefit plan" established or maintained by a private employer engaged in commerce or in any industry or activity affecting commerce. 29 U.S.C.S. § 1003(a)(1). The term "employee benefit plan" is defined as, among other things, an "employee pension benefit plan." 29 U.S.C.S. § 1002(3). The term "employee pension benefit plan" is defined as, among other things, any plan established or maintained by an employer that provides retirement income to employees or results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan. 29 U.S.C.S. § 1002(2)(A).

**B. The Retirement Plan Is An ERISA-Qualified Plan**

The Retirement Plan, a copy of which is annexed to the Brickell Declaration as Exhibit 1, was originally adopted by Defender Care dba E-Partners LLC (the "Company") for the benefit of its eligible employees effective January 1, 2019; the Retirement Plan was subsequently amended and restated pursuant to that certain Volume Submitter Adoption Agreement for the DATAIR Employee Benefit Systems, Inc. Defined Benefit Pension Plan dated July 21, 2020 (the "Adoption Agreement"), a copy of which has been annexed to the Brickell Declaration as Exhibit 2.

The purpose of the Retirement Plan is to provide retirement benefits to participating eligible employees in accordance with the terms of the Retirement Plan and the Adoption Agreement. Section 1.1.3 of the Retirement Plan. Section 3.11.5 of the Retirement Plan provides in part that "[t]he right of any Participant or his Beneficiary in any distribution hereunder or to any Account shall not be subject to alienation, assignment, or transfer, voluntarily or involuntarily, by operation of law or otherwise, except as may be expressly permitted herein. No Participant shall assign, transfer, or dispose of such right, nor shall any such right be subjected to attachment,

5

execution, garnishment, sequestration, or other legal, equitable, or other process." Pursuant to the terms of the Retirement Plan and the applicable Internal Revenue Service opinion letter dated February 28, 2023 issued to DATAIR Employee Benefit Systems Inc., a copy of which is annexed to the Brickell Declaration as Exhibit 3, the Retirement Plan is tax-qualified under § 401 of the Code.

Further, OC admits that "[a]ccording to Merrill's service document, each of the five Merrill RCMA Accounts is a retirement account qualified under section 401 of the United States Internal Revenue Code." Objection at 5. OC concedes that "the account holder name of each of the [Retirement] Accounts is shown as 'Defender Care DBA E-Partners LLC.'" Objection at 7. The LLC is the sponsor of the Retirement Plan and financial accounts, including the Retirement Accounts,[3] which exist for the benefit of the Retirement Plan and the participants in the plan. Grossman is just one of multiple participants in the LLC's retirement plan.

Because the Retirement Plan is a tax-qualified retirement plan under § 401 of the Code, ERISA's anti-alienation bar prohibits a creditor (like OC) from garnishing or executing on a tax-qualified retirement plan subject to ERISA to collect on a judgment against a plan participant (like Grossman). *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 369 (1990); *Ditto v. McCurdy*, 90 Haw. 345, 353, 978 P.2d 783 (1999).

In *Guidry*, the Supreme Court held that ERISA foreclosed the imposition of a constructive trust on the pension benefits of a former union official against whom it had obtained a sizable judgment for embezzling union funds because ERISA's anti-alienation provision foreclosed that

_____

[3] OC also contends that two "CMA" Accounts, as distinguished from the five "RMCA" accounts, are not retirement accounts. Whatever surface appeal this contention may or may not have, and without waiving any rights to challenge this assertion should it become relevant, it is of no moment as Grossman is not aware, based on records adduced by OC from Merrill Lynch, that either of these two "CMA" accounts presently have any funds in them (other than one which may have four cents in it per OC, Objection at 3).

remedy. *Id*. at 376-77. Regardless of any "natural distaste" for such a result, the Supreme Court found the statute was clear and only Congress could change it, noting that the judgment debtor is not the only beneficiary of pension benefits. *Id*. at 377. The Court based its conclusion on the fact that ERISA bars garnishment of ERISA plan benefits, and it found "no meaningful distinction between a writ of garnishment and the constructive trust remedy imposed in this case." *Id.* at 372.

Under this principle, funds deposited into the Retirement Plan for a participant like Grossman are not subject to garnishment or execution. The New York legislature cannot alter this effect regardless of its rationale or explicit or implicit intent. By analogy, and as discussed in greater detail below, when confronted with state court limitations on retirement accounts, the Hawaii Supreme Court found that a state statute purporting to limit the protection from creditors afforded to retirement plans to be preempted by ERISA. *Ditto*, 90 Haw. 345.

### C.  CPLR § 5205(c)(5) Is Preempted By ERISA

ERISA § 514(a) (codified as 11 U.S.C. § 1144(a)) provides that ERISA preempts "any and all State laws insofar as they . . . relate to any employee benefit plan covered by ERISA." Its purpose "is to enable employers 'to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits.'" *Egelhoff v. Egelhoff*, 532 U.S. 141, 148 (2001). In determining whether a state law "relates to" a plan, the Supreme Court has considered whether the state law has a "connection with or reference to" an ERISA-covered plan. *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 96-97 (1983). A state law has a "reference to" an ERISA-covered plan if the law specifically refers to such a plan; "acts immediately and exclusively upon" the plan; or if the plan's existence "is essential to the law's operation." *Cal. Div. of Labor Standards Enf't v. Dillingham Constr., N.A.*, 519 U.S. 316, 324-25 (1997). State laws that "reference" ERISA plans are preempted per se, without regard to whether

they are viewed as consistent or inconsistent with the goals of ERISA. *Mackey v. Lanier Collection Agency & Service, Inc*., 486 U.S. 825, 829 (1988).[4]

CPLR § 5205(c) contains an express "reference to" ERISA-covered plans:

> For purposes of this subdivision, all trusts, custodial accounts, annuities, insurance contracts, monies, assets or interests established as part of, and all payments from, either any trust or plan, which is qualified as an individual retirement account under section 408 or 408A of the United States Internal Revenue Code of 1986, as amended, a Keogh (HR-10), **retirement or other plan established by a corporation, which is qualified under section 401 of the United States Internal Revenue Code of 1986**, as amended, or created as a result of rollovers from such plans pursuant to sections 402 (a) (5), 403 (a) (4), 408 (d) (3) or 408A of the Internal Revenue Code of 1986, as amended … shall be considered a trust which has been created by or which has proceeded from a person other than the judgment debtor, even though such judgment debtor is (i) in the case of an individual retirement account plan, an individual who is the settlor of and depositor to such account plan, or (ii) a self-employed individual, or (iii) a partner of the entity sponsoring the Keogh (HR-10) plan, or (iv) a shareholder of the corporation sponsoring the retirement or other plan or (v) a participant in a section 457 plan.

CPLR § 5205(c)(5) (emphasis added).

Thus, in light of this plain and unambiguous reference to ERISA plans, CPLR § 5205(c)(5) is *per se* pre-empted without regard to whether it is consistent or inconsistent with the goals of ERISA. *Mackey v. Lanier Collection Agency & Serv., Inc*., 486 U.S. 825, 829 (1988).

---

[4] A state law that does not "refer to" ERISA plans may still be preempted if it has a "connection with" such plans. *Shaw,* 463 U.S. at 96-97. To determine if a state law has a "connection with" an ERISA-covered plan, a court turns to "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive," and the "nature and effect of the state law on" an ERISA plan. *Dillingham Construction*, 519 U.S. at 325. Thus, if a state law has a "connection with or reference to" an ERISA-covered plan, it is preempted.

There are numerous cases from the past several decades holding that benefits under a retirement plan which is covered by ERISA are not subject to claims of garnishment by a general creditor of a plan beneficiary.[5] *See, e.g.*, *Guidry*, 493 U.S. 365; *Tenneco, Inc. v. First Virginia Bank of Tidewater*, 698 F.2d 688 (4th Cir. 1983); *Gen. Motors Corp. v. Buha*, 623 F.2d 455 (6th Cir.1980) (affirming injunction of creditor against garnishing benefits in ERISA plan); *Northwest Airlines, Inc. v. Roemer*, 603 F. Supp. 7 (D. Minn. 1984) (collecting prior state and federal court cases). The purpose of ERISA's bar on garnishment has been well articulated:

> [A] principal rationale behind ERISA's anti-alienation provision is the prohibition of involuntary levies by third party creditors on vested plan benefits . . . .  Such a prohibition supports Congress's primary objective of ensuring through ERISA that, if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit . . . he actually receives it.

*Kickham Hanley P.C. v. Kodak Ret. Income Plan*, 558 F.3d 204, 210 (2d Cir. 2009) (citations and quotation marks omitted). OC contends that CPLR § 5205(c)(5) provides authority that certain additions to a tax-qualified retirement plan for a certain period are subject to exemption or ultimate garnishment. However, New York state law cannot supersede the requirements set forth in the Code and ERISA that retirement plans contain an anti-alienation provision.

In *Ditto*, 90 Haw. 345, the Hawaii Supreme Court evaluated whether Haw. Rev. Stat. § 651-124 was enforceable. The statute in that case exempted the right of a debtor to pension funds, but it also provided that "'this section shall not apply to[,]' *inter alia*, 'contributions made to a plan or arrangement within the three years before the date a debtor files for bankruptcy, whether voluntary or involuntary, or within three years before the date a civil action is initiated against the debtor[.]'" *Id.* at 347 (quoting Haw. Rev. Stat. § 651-124). The Hawaii Supreme Court began its

---

[5] Statutory exceptions where the creditor is the plan itself, the federal government, or an ex-spouse of the judgment debtor are plainly inapplicable herein.

analysis by reviewing the purpose and intent of ERISA federal cases interpreting ERISA, including *Guidry*, 493 U.S. at 369, and *Buha*, 623 F.2d 455. *Ditto*, 90 Haw. at 353-57.  It concluded based upon its review as follows:

> ERISA does not refer to "garnishment" per se. However, section 206(d)(1) of ERISA expressly states that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." ERISA § 206(d)(1), 29 U.S.C. 1056(d)(1). This provision does not apply to "any voluntary and revocable assignment of not to exceed 10 percent of any benefit payment." ERISA § 206(d)(2), 29 U.S.C. 1056(d)(2). A provision nearly identical to section 206(d)(1) is found in the companion tax provisions to ERISA in the Internal Revenue Code wherein assignment or alienation of benefits is also prohibited if a pension plan is to be qualified for special tax benefits under the statute. *See* 26 U.S.C. § 401(a)(13) (1994). Additionally, ERISA's general preemption clause provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan[.]" ERISA § 514(a), 29 U.S.C. § 1144(a).

*Id.* at 352. The court then concluded:

> ERISA erects a general bar to the garnishment of pension benefits from ERISA-covered plans and, therefore, prohibits the garnishment of [ERISA-qualified Plans]. Insofar as compliance with both section 206(d)(1) of ERISA and the exception to HRS § 651-124 is "a physical impossibility," *Pacific Gas*, 461 U.S. at 204, 103 S. Ct. 1713, we hold that the exception to HRS § 651-124 is preempted to the extent that it actually conflicts with ERISA.

*Id.* at 359.

CPLR § 5205(c)(5) and Haw. Rev. Stat. § 651-124 are analogous in that both attempt to put some limit on the anti-alienation of contributions or additions to tax-qualified retirement plans that are subject to ERISA by purporting to expose certain contributions to such plans to garnishment by creditors. As noted, CPLR § 5205(c)(2) makes specific reference to plans qualified under section 401 of the Code, like the plan at issue here. OC, a creditor of Grossman, resorts to the exception in CPLR § 5205(c)(5) to invalidate Grossman's interests as a participant in the

Retirement Plan.  However, attaching Grossman's contributions or additions into the Retirement

Plan is barred by ERISA. *See, e.g., Guidry*, 493 U.S. 365; *Buha,* 623 F.2d 455; *Ditto*, 90 Haw.

345. As applied to tax-qualified ERISA plans like the Retirement Plan at issue here, CPLR

§5205(c)(5) is preempted *per se*.

Moreover, the anti-alienation and anti-assignment prohibition of contributions to a

retirement plan subject to ERISA and the exception set forth in CPLR § 5205(c)(5) permitting the

garnishment of those same contributions and additions to such a plan are not reconcilable.

> In the face of this direct clash between state law and the provisions
> and objectives of ERISA, the state law cannot stand. Conventional
> conflict pre-emption principles require pre-emption "where
> compliance with both federal and state regulations is a physical
> impossibility . . . or where state law stands as an obstacle to the
> accomplishment and execution of the full purposes and objectives
> of Congress.

*Boggs v. Boggs*, 520 U.S. 833, 844 (1997) (quoting *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505

U. S. 88, 98 (1992)). As the bankruptcy court observed in *In Re Bissell* (255 B.R. 402, 407-08

(Bankr. E.D. Va. 2000)), in addressing the import of Virginia state law on an ERISA-qualified

plan, "it is clear that the Virginia General Assembly can pass no law that would affect in any way

the ability to garnish an ERISA-qualified pension plan. It can neither permit creditors to recover

from an ERISA-qualified pension plan nor add protections for debtors not contained in ERISA,

such as limiting the enforceability of qualified domestic relations orders against pension plans."

As noted, to the extent CPLR § 5205(c)(5) purports to limit the protections for benefits in

a tax-qualified ERISA plan, this "actually conflicts with" ERISA. *Ellis Nat'l Bank v. Irving Tr.

Co.*, 786 F.2d 466, 469 (2d Cir. 1986).  Moreover, any limitation by CPLR § 5205(c)(5) on the

protection of a tax-qualified ERISA plan "stands as an obstacle to the accomplishment and

execution of the full purposes and objectives of ERISA." *Id.* (citations and quotation marks

omitted). "The purposes of the anti-alienation provision have been construed to include the protection of the spendthrift employee from his own financial improvidence in dealing with third parties . . . and the prohibition of involuntary levies by third party creditors on vested plan benefits[.]" *Id.* at 470 (citations and quotation marks omitted).

Notably, the Second Circuit in *Ellis Nat'l Bank* declined to create even a "criminal misconduct" exception to the ERISA bar against alienation that otherwise might be applicable under state law despite its equitable appeal as it "undermine[d] a fundamental purpose of ERISA that we believe should be modified, if at all, only by Congress." *Id.* at 471.

> In enacting ERISA, Congress created a new public law of private benefits, a law designed to remedy through a regulated private sector system a host of defects that the old social security system has been found to have. Congress' primary objective was to ensure that "if a worker has been promised a defined pension benefit upon retirement — and if he has fulfilled whatever conditions are required to obtain a vested benefit . . . he actually receives it."

*Id.* at 471 (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 510 (1981)). This comports with the subsequent decision by the Supreme Court in *Guidry* noted *supra* precluding the imposition of a constructive trust on the qualified pension of a criminal embezzler.

In *In re Mann*, 134 B.R. 710 (E.D.N.Y. 1991), the Bankruptcy Court in the Southern District of New York highlighted the distinction between a tax-qualified retirement plan that is subject to the anti-alienation protection of ERISA and an individual retirement account (an "IRA") that is not. IRAs are generally created and maintained by individuals and not employers, and are not specifically covered by ERISA. However, in its analysis, one particular paragraph in the *Mann* decision is helpful in setting forth the basic finding that quite a number of bankruptcy courts have found ERISA preempts state exemption laws in the bankruptcy context (all citing the Supreme Court's *Mackey* decision):

During the late 1980's, several Bankruptcy Courts in other states addressed the issue of ERISA preemption of their state exemption laws in the bankruptcy context. The majority of these decisions held that these state exemption provisions are preempted by ERISA. *In re Flindall*, 105 B.R. 32 (Bankr.D.Ariz. 1989); *In re McLead, III*, 102 B.R. 60 (Bankr.S.D.Miss. 1989), *In re Komet*, 93 B.R. 498 (Bankr.W.D.Tex. 1988), withdrawn, *In re Komet*, 104 B.R. 799 (Bankr.W.D.Tex. 1989); *In re Hirsch*, 98 B.R. 1 (Bankr.D.Ariz. 1988); *In re Brown*, 95 B.R. 216 (Bankr.N.D.Okla. 1989); *In re Conroy*, 110 B.R. 492 (Bankr.D.Mont. 1990); *In re Gaines*, 106 B.R. 1008 (Bankr.W.D.Mo. 1989); *In re Bryant*, 106 B.R. 727 (Bankr.M.D.Fla. 1989); *In re Sheppard*, 106 B.R. 724 (Bankr.M.D.Fla. 1989). In general, the decisions are based upon a broad reading of the Supreme Court's decision in *Mackey v. Lanier Collections Agency Service, Inc.*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988). These cases have interpreted *Mackey* to mean that any state statute which refers to ERISA directly or indirectly is preempted by ERISA, regardless of whether it conflicts with ERISA's provisions or intentions. In *Mackey*, the Supreme Court affirmed the Georgia Supreme Court holding that a Georgia statute that prohibited garnishment of ERISA Plans was preempted by the provisions of ERISA. The Court concluded that "state laws which make 'reference to' ERISA plans are laws that 'relate to' those plans within the meaning of section 514(a)" *Mackey*, 486 U.S. at 829, 108 S.Ct. at 2185. The Court further concluded that the statute's express reference to ERISA plans suffices to bring it within the Federal Laws preemptive reach." *Id*. This is precisely the argument put forth by the Trustee herein. The Trustee asserts that the implicit reference to ERISA in sections 5205(c)(1) and (2) is sufficient to warrant pre-emption.

*Mann*, 134 B.R. at 712-13.

Similarly, in *VFS Fin., Inc. v. Elias-Savion-Fox LLC*, 73 F. Supp. 3d 329 (S.D.N.Y. 2014), the district court rigorously analyzed the defendants' argument that ERISA preempted application of CPLR § 5205 to a type of retirement arrangement known as a "Savings Incentive Match Plan for Employees (SIMPLE) Retirement Account/Individual Retirement Account" (commonly referred to as an "SRA/IRA"). Although the Court held that ERISA did not preempt application of CPLR § 5205 to the SRA/IRA in question because Part 2 of ERISA (which contains the anti-alienation provision described above) does not apply to an SRA/IRA (or any other type of

individual retirement account described in § 408 of the Code) – and thus the *VFS Financing* decision is distinguishable from this case, which does not involve an SRA/IRA – the court's in-depth analysis is nonetheless relevant here.  Specifically, the court noted that

> one may view ERISA as creating three distinct legal regimes with respect to the ability of a creditor to garnish a beneficiary's retirement account. The first legal regime involves accounts subject to ERISA's anti-alienation clause, 29 U.S.C. § 1056(d)(1), including employer-maintained accounts such as 401–Ks. ERISA's anti-alienation clause reflects an affirmative congressional policy judgment generally to protect these accounts from creditors.

73 F. Supp. 3d at 344-46.  This is precisely the legal regime applicable to the facts herein.

In sum, ERISA mandates that all state laws, insofar as they relate to employee benefit plans, are superseded, (*see* 29 U.S.C.S. § 1144(a)), and that benefits provided by an employee benefit plan covered by ERISA may not be assigned or alienated.  29 U.S.C.S. § 1056(d)(1).  As a result, and because each of the Accounts is part of a tax-qualified retirement plan for purposes of section 401(a) of the Internal Revenue Code, the Retirement Plan (and the Accounts) are subject to Title I of ERISA.  Accordingly, CPLR § 5205 is pre-empted by the express terms of ERISA to the extent that it purports to permit assignment or alienation of the funds held in the ERISA-qualified Accounts.

**III.    The Objection Should Be Denied Because: (i) OC Has Failed to Comply with Procedural Requirements and It Has Not Served Appropriate Representatives of the Retirement Plan; and (ii) Disposition of Third Party Rights Involving Non-Debtors and Other Third Parties Is Not Appropriate in the Present Action, To the Extent that OC Seeks the Release of Funds Held by Third Parties**

In the Objection, OC initially requests that the exemption asserted by Grossman be rejected. Objection at 1. However, OC then requests extraordinary *affirmative* relief by also requesting that all of the funds in the Retirement Plan held and administered by certain third parties (who have not been properly served or made a party to this action) be liquidated and delivered to

OC in partial satisfaction of its judgment against Grossman, without regard for the interests of other participants in the Retirement Plan.  This is particularly troubling for a number of reasons.

OC has not served or made a party to this action any representative of the Retirement Plan, including any trustee or third-party entity with custody over the funds. OC incorrectly assumes, and lacks information and belief to assert, that the funds in the Retirement Plan are held solely for the benefit of Grossman.  However, Grossman is not the only participant in the Retirement Plan.

OC relies on statements provided by Merrill Lynch in response to OC's information subpoena to contend that all of the funds held in the Retirement Accounts are funds contributed solely by Grossman and that he has a direct interest therein.  However, OC's reliance on such statement is misplaced, as they do not establish what OC contends they establish, and OC has not offered any facts or evidence to support its claim that all of the funds held in the Retirement Accounts have been contributed solely by Grossman.

Moreover, OC is on notice that the funds in question are held in a retirement account. It asserts prominently (yet disingenuously) that the account holder name of each of the "Accounts is shown as "**Defender Care DBA E-Partners LLC**."" Objection at 7.  However, the account statements of Merrill Lynch filed by OC clearly show the full name of the account holder, rather than the abbreviated name, is **DEFENDER CARE DBA E-PARTNERS LLC DEFINED BENEFIT PLAN U/A01/01/2019**.  *See, e.g*., Exhibit A to OC's Objection (Doc ID No 59-2) at 4, 6, 9, 11, 14 and 16. Thus, OC knew or should know that that Merrill Lynch treats the Accounts as accounts for a qualified plan under 401 (a) of the Code *with a  related trust* (*see* Objection at 3), and that the account is for the benefit of the trust in the name of DEFENDER CARE DBA E-PARTNERS LLC DEFINED BENEFIT PLAN U/A01/01/2019, held for the benefit of its participants.  As there is more than one participant in this plan, OC simply has no good faith basis

to make the unsupported assertion in its Application that all of the funds were contributed by Grossman and that Defender Care DBA E-Partners LLC is the account holder.

If OC seeks an order in aid of collection directed against a third party, it also needs to follow relevant statutory requirements, seek appropriate relief, and properly notify third parties before rights of those third parties are adjudicated.  There is no indication that this has occurred, and therefore, the Application must be denied for this reason as well. Without all of the proper representatives of the Retirement Plan in their appropriate capacities being made parties to the proceeding with appropriate notice, the Application should not be entertained and any request for adjudication or direction to release the funds in the Retirement Plan to OC should be denied in entirety.

The failure to involve and appropriately notify the proper representatives of the Retirement Plan and to seek turnover of funds in a Retirement Plan in which Grossman is only one participant is not insignificant. An adverse decision has undesirable consequences for all plan participants – not just Grossman – including potential loss of ERISA protections and tax treatment that could affect all participants in the Retirement Plan, potential breaches of fiduciary duty, additional legal proceedings, and considerable administrative and accounting costs.  For instance, the IRS enforces rules concerning violations of ERISA qualifications, and a decision by this Court on Grossman's interests and any decision permitting alienation of an ERISA-qualified plan could jeopardize the further existence of the Retirement Plan and the retirement benefits of the other participants. *See* 26 U.S.C. § 401(a) ("A trust shall not constitute a qualified trust under this section unless the plan . . . may not be assigned or alienated[.]"). An adverse decision could also impact third party plan participants by creating potentially large tax liabilities related to the funds in the Retirement Plan, which could lose their deferred protection from income tax and subject them to immediate liability.

16

Moreover, administrators of ERISA-qualified plans also have due process rights, including a legitimate and reasonable interest in participating in separate, non-truncated proceedings, with discovery and procedural protections both for themselves, as trustees, and their constituents, *i.e.*, all plan participants. In light of these disparate interests, policy considerations, and potential adverse consequences for third party participants in the Retirement Plan who have not been named as parties herein, it is respectfully submitted that any adjudication of the Application in this context would be violative of the due process rights of multiple parties not before the Court. Accordingly, the Application is not the proper vehicle to adjudicate these concerns and, thus, it should be denied.

## IV.     Grossman Denies OC's Allegations Of Fraud

Finally, Grossman also disputes OC's suggestion that any of the facts relied upon by OC can somehow be characterized as "badges of fraud." Contributions to the Retirement Accounts include not only contributions from *participants*, which includes Grossman, but also profit sharing contributions from the *sponsoring employer*, in this case the LLC, to eligible participants in the Retirement Plan, which includes Grossman. As the profit sharing contributions are made by a third party for eligible employees, all such contributions into the Retirement Accounts are not transfers by Grossman and therefore cannot be the subject of avoidance.

Moreover, with regard to the timing of the subject investments, it is true that certain of the accounts were partially funded in July and August of 2021, which was after the arbitration was commenced. However, the arbitration panel did not even decide that claims could proceed against Grossman individually until February 11, 2022, more than six months after these accounts were opened. Perhaps more compelling, and as is clear from the title of the Retirement Plan itself, the process of setting up the Accounts actually began on January 1, 2019, nearly two years before the arbitration was commenced. These facts, combined with the fact that Grossman is currently 75

17

years old, underscore that the Accounts were set up for the stated purpose, which was to provide the beneficiaries thereof with income during their retirement, rather than for any fraudulent purpose.

## **CONCLUSION**

For all of the foregoing reasons, it is respectfully submitted that the relief sought by OC should be denied in its entirety.

Dated: New York, New York
January 3, 2024

Respectfully submitted,

**PRYOR CASHMAN LLP**

Jamie M. Brickell
7 Times Square
New York, NY 10036
P: 212.421.4100
F: 212.326.0806
jbrickell@pryorcashman.com

*Attorneys for Planet Entertainment,*
*LLC and Steve Grossman*

## CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2024 I caused a copy of the foregoing Memorandum Of Law In Opposition To OC's Application For an Order That Certain Grossman Accounts are not Exempt from OC's Collection Efforts Against Him to be served on all counsel of record by electronic means through the Court's Electronic Case Filing System.

*/s/ Jamie M. Brickell*
Jamie M. Brickell