UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OFFICE CREATE CORPORATION,

                Petitioner,

– against –

PLANET ENTERTAINMENT, LLC, and
STEVE GROSSMAN,

                Respondents.

**ORDER**

22-cv-8848 (ER)

RAMOS, D.J.:

    Office Create Corporation brought this action to confirm an arbitration award against Planet Entertainment, LLC, and Steve Grossman (Respondents). The Court granted Office Create's petition and entered judgment in its favor. This dispute concerns Office Create's efforts to enforce that judgment. After Office Create attempted to restrain certain Merrill Lynch accounts, Grossman claimed that those accounts were exempt from application to satisfaction of the judgment. Office Create has objected to the exemption claim. For the reasons set forth below, Office Create's objection is GRANTED IN PART and DENIED IN PART.

### I. BACKGROUND

    The underlying facts are detailed in the Court's previous opinion granting Office Create's petition. *Office Create Corp. v. Planet Ent., LLC*, No. 22 Civ. 8848 (ER), 2023 WL 5918017 (S.D.N.Y. Sept. 11, 2023); *see* Doc. 49. As relevant here, Office Create obtained an award from an arbitration tribunal on October 3, 2022. *Office Create*, 2023 WL 5918017, at *1. The total award was over $23 million, and the tribunal held Respondents jointly and severally liable. *Id.*; *see also* Doc. 73.

    Office Create filed a petition to confirm the arbitration award in this Court on October 17, 2022. Doc. 1. Respondents cross-moved to vacate the award on November 14, 2022. Doc. 24. On September 11, 2023, the Court granted Office Create's petition

and denied Respondents' cross-motion. Doc. 49. Judgment was entered the same day. Doc. 50.[1]

Office Create then restrained several Merrill Lynch accounts in which it claims Grossman has an interest. Doc. 59 at 1. On October 3, 2023, Office Create served an information subpoena and restraining notice on Merrill Lynch. Doc. 59-1 ¶ 6. Office Create mailed a copy of that restraining notice to Grossman as well. *Id.* ¶ 7. On October 17, Merrill Lynch provided account statements for seven accounts to Office Create. *Id.* ¶¶ 8–9. Two of the accounts were designated as "Cash Management Accounts"; the other five were designated as "Retirement Cash Management Accounts." *Id.* ¶¶ 10–11. Grossman and his wife were named on the cash management accounts. Doc. 67-3 at 2–22. The name listed on each retirement account was "Defender Care dba E-Partners LLC Defined Benefit Plan" or "Defender Care dba E-Partners LLC Retirement Plan." *Id.* at 23–36 (capitalization omitted). Office Create asserts that "Defender Care dba E-Partners" is owned and controlled by Grossman. Doc. 59-1 ¶ 16; *see also* Doc. 59-5.

On December 8, Office Create received an "Exemption Claim Form" from Grossman. Doc. 59-1 ¶ 12. On that form, Grossman indicated that the Merrill Lynch accounts were exempt from restraint because they contained "payments from pensions and retirement accounts." *Id.* (emphasis omitted); *see* Doc. 59-2 at 2–3. He attached statements for four of the retirement accounts. Doc. 59-1 ¶ 12; *see* Doc. 59-2 at 4–24. Those statements showed that the balance in each account had increased compared to the prior statements that Office Create received from Merrill Lynch. Doc. 59-1 ¶¶ 13–14. According to Office Create, the total value of the seven accounts is over $2 million. *Id.* ¶ 14.

On December 12, Office Create objected to Grossman's exemption claim. Doc. 58. Office Create asks the Court to reject the exemption claim, declare that the Merrill

---

[1] The original judgment did not include the specific amount to which Office Create was entitled. An amended judgment including that amount was entered on January 30, 2024. Doc. 73.

2

Lynch accounts are not exempt from application to satisfaction of the Court's judgment, and direct the release of funds in the accounts to Office Create.  Doc. 59 at 7.

Grossman responded to the objection on January 3, 2024.  Doc. 65.  The same day, nonparty Merrill Lynch entered an appearance and responded to Office Create's objection as well.  Docs. 61, 62.  Merrill Lynch stated that it is merely the "neutral custodian" of the accounts.  Doc. 62 ¶ 4.  As a result, Merrill Lynch was unable to confirm whether Office Create could reach the funds in the retirement accounts, and it requested the Court's guidance on how to proceed.  *Id.* ¶¶ 5–13.  Office Create filed a reply on January 9.  Doc. 67.

One month later, on February 9, Grossman requested permission to submit an affidavit showing that the retirement plan that owns the retirement accounts has other participants in addition to Grossman and his wife.  Doc. 79.  The Court granted the request at a status conference held on February 20.  Grossman submitted a declaration and supporting exhibits on February 26.  Doc. 82.  The next day, Office Create filed a letter objecting to Grossman's submission.  Doc. 83.

## II.   LEGAL STANDARD

A court has jurisdiction to "hear ancillary disputes relating to execution and enforcement of judgments [as] an inherent part of a court's jurisdiction over the underlying case."  *KLS Diversified Master Fund, L.P., v. McDevitt*, No. 19 Civ. 3774 (LJL), 2022 WL 220058, at *4 (S.D.N.Y. Jan. 25, 2022) (alteration in original) (citation omitted).  "The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."  Fed. R. Civ. P. 69(a)(1); *accord, e.g.*, *Mitchell v. Garrison Protective Servs., Inc.*, 579 F. App'x 18, 21 (2d Cir. 2014).

Article 52 of the New York Civil Practice Law and Rules (CPLR) establishes "procedures for the enforcement of money judgments in New York, which may include

3

the imposition of a restraining notice against a judgment debtor's bank account to secure funds for later transfer to the judgment creditor through a sheriff's execution or turnover proceeding." *Cruz v. TD Bank, N.A.*, 2 N.E.3d 221, 223 (N.Y. 2013). Some funds, however, are exempt from restraint, such as "Social Security benefits, public assistance, unemployment insurance, pension payments and the like." *Id.*

CPLR section 5222-a sets out notification and claim procedures that are "intended to educate judgment debtors concerning the types of funds that are exempt from restraint or execution in order to facilitate the filing of exemption claims." *Id.* at 224. Under that provision, a judgment creditor restraining an account at a banking institution must serve the banking institution with two copies of the restraining notice, an exemption notice, and two exemption claim forms. CPLR § 5222-a(b)(1). Within two business days, the banking institution must serve a copy of the restraining notice, the exemption notice, and the exemption claim forms on the judgment debtor. *Id.* § 5222-a(b)(3). The judgment debtor then may claim an exemption by completing the forms, signing them under penalty of perjury, and serving them on the banking institution and the judgment creditor's attorney. *Id.* § 5222-a(c)(1). The judgment creditor may object to the exemption claim by serving the banking institution and the judgment debtor with its motion papers. *Id.* § 5222-a(d).[2]

---

[2] The statute also provides for a hearing to decide the motion that "shall be noticed for seven days after service of the moving papers." CPLR § 5222-a(d). It is not clear whether such a hearing is always required. *Compare Midland Funding LLC v. Singleton*, 935 N.Y.S.2d 844, 848–49 (Dist. Ct. 2011) ("The statute offers no guidance to the court as to whether this determination is to be made solely on papers or whether an evidentiary hearing is always required. . . . The use of the word 'hearing' contained in CPLR 5222-a(d) must be read to include both the traditional method of hearing a motion on papers and if the determination of whether the funds are exempt cannot be made on papers to permit an evidentiary hearing to determine . . . whether the funds on deposit in the account are exempt or if not fully exempt, the amount on deposit in the account that is exempt."), *with Midland Funding LLC v. Roberts*, 950 N.Y.S.2d 867, 870 (Sup. Ct. 2012) ("CPLR § 5222-a(d) specifically refers to holding a 'hearing' and does not provide for generally resolving these proceedings on the papers."). The parties in this case have not suggested that the Court must hold a hearing before deciding the motion. As discussed below, however, the Court will offer both parties the opportunity to request a hearing.

An exemption claim form executed by the judgment debtor is prima facie evidence that the funds are exempt. *Id.* The judgment creditor bears the burden of proof to establish the amount of funds that are not exempt. *Id.*; *see, e.g.*, *Midland Funding LLC v. Roberts*, 950 N.Y.S.2d 867, 869 (Sup. Ct. 2012).

## III.  DISCUSSION

In this case, Grossman's exemption claim form is prima facie evidence of an exemption, and the burden is on Office Create to show that the funds in the accounts are not exempt. CPLR § 5222-a(d). With respect to the retirement accounts, Office Create has failed to satisfy that burden, so the objection is denied. With respect to the cash management accounts, however, the objection is granted.

### A.  Service of the Restraining Notice

As a threshold matter, Grossman asserts that Office Create may not have properly served the restraining notice on Merrill Lynch. Doc. 65 at 2. According to Grossman, it is unclear whether Office Create sent the restraining notice to Merrill Lynch in Connecticut—where the accounts are located—or to Merrill Lynch in New York. *Id.*

Grossman argues that the distinction matters because of New York's "separate entity rule." *Id.* at 3. Under that rule, "even when a bank garnishee with a New York branch is subject to personal jurisdiction, its other branches are to be treated as separate entities for certain purposes," including "article 52 postjudgment restraining notices and turnover orders." *Motorola Credit Corp. v. Standard Chartered Bank*, 21 N.E.3d 223, 226 (N.Y. 2014). "In other words, a restraining notice or turnover order served on a New York branch will be effective for assets held in accounts at that branch but will have no impact on assets in other branches." *Id.* Grossman contends that a restraining notice served on Merrill Lynch in New York can have no impact on Connecticut-held assets. Doc. 65 at 3.

This argument fails because Merrill Lynch documents in the record state that Merrill Lynch "is a registered broker-dealer," Doc. 59-2 at 4, and "is not a bank," Doc.

5

67-3 at 25. Grossman's argument does not explain why the Court should apply the separate entity rule to deny the objection in these circumstances. *See Berkshire Bank v. Tedeschi*, No. 11 Civ. 0767 (LEK) (CFH), 2016 WL 1029526, at *2 n.2 (N.D.N.Y. Mar. 15, 2016) ("Defendant has not provided any authority for the separate entity rule applying to a brokerage account, carried by a brokerage dealer.").

### B. Retirement Accounts

With respect to the retirement accounts, the principal dispute between the parties is the application of CPLR section 5205. That provision lists certain personal property that is "exempt from application to the satisfaction of a money judgment." CPLR § 5205(a). As relevant here, property is exempt if it is "held in trust for a judgment debtor, where the trust has been created by, or the fund so held in trust has proceeded from, a person other than the judgment debtor." *Id.* § 5205(c)(1). This exemption includes "all trusts, custodial accounts, annuities, insurance contracts, monies, assets or interests established as part of, and all payments from, either any trust or plan" that is qualified under section 401 of the Internal Revenue Code. *Id.* § 5205(c)(2).

At the same time, however, this exemption is subject to an exception. Any "[a]dditions to an asset described in paragraph two"—for instance, additions to a plan qualified under section 401 of the Internal Revenue Code—"shall not be exempt from application to the satisfaction of a money judgment if (i) made after the date that is ninety days before the interposition of the claim on which such judgment was entered, or (ii) deemed to be voidable transactions under article ten of the debtor and creditor law." *Id.* § 5205(c)(5).

The parties agree that the five Merrill Lynch retirement accounts are qualified under section 401 of the Internal Revenue Code. Doc. 59 at 5; Doc. 65 at 3–4. Their disagreement concerns whether the exception found in section 5205(c)(5) applies to those accounts. Grossman argues that it does not apply because section 5205(c) is preempted by the Employee Retirement Income Security Act of 1974 (ERISA). Doc. 65 at 4. He

6

relies on ERISA's anti-alienation provision, which states: "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). This provision "erects a general bar to the garnishment of pension benefits from plans covered by [ERISA]." *Kickham Hanley P.C. v. Kodak Ret. Income Plan*, 558 F.3d 204, 210 (2d Cir. 2009) (quoting *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 371 (1990)).[3] Office Create did not respond to the preemption argument in its brief, so the Court may deem the point conceded. *See, e.g.*, *Felske v. Hirschmann*, No. 10 Civ. 8899 (RMB), 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012) ("A plaintiff effectively concedes a defendant's arguments by his failure to respond to them.").[4]

Instead, Office Create asserts that the retirement accounts are not ERISA accounts because they cover only Grossman and his wife. Doc. 67 at 3–5; *see, e.g.*, *Silverman v. Unum Grp.*, No. 14 Civ. 6439 (DLI) (SMG), 2015 WL 4603345, at *3 (E.D.N.Y. July 30, 2015) (noting that a plan "must provide benefits to at least one employee" to qualify as an ERISA plan and that "the Court cannot consider the owner of the corporation an 'employee' where the corporation is 'wholly owned by the individual or by the individual and his or her spouse'" (citations omitted)). The question for the Court, therefore, is whether the retirement accounts at issue qualify as ERISA accounts. If Grossman

---

[3] Courts have also observed, however, that ERISA's anti-alienation provision does not apply once the benefits have been distributed. *See, e.g.*, *United States v. All Funds Distributed to Weiss*, 345 F.3d 49, 57 (2d Cir. 2003) ("Only once the proceeds of the pension plan have been released to the beneficiary's hands, can creditors and others pursue claims against the funds and the funds' owner(s)."); *see also SEC v. Neto*, 27 F. Supp. 3d 434, 442 (S.D.N.Y. 2014) (collecting cases).

[4] At a status conference held on February 20, 2024, counsel for Office Create summarily cited one case, *VFS Financing, Inc. v. Elias-Savion-Fox LLC*, 73 F. Supp. 3d 329 (S.D.N.Y. 2014), for the proposition that ERISA does not preempt CPLR section 5205(c). That case, however, involved "SRA/IRA" accounts that are not covered by ERISA's anti-alienation provision. *Id.* at 341. That point was central to the court's distinction of an earlier decision, *FDIC v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. M-18-302 (KMW), 1992 WL 204380 (S.D.N.Y. Aug. 11, 1992), which held that ERISA *does* preempt section 5205(c) as it applies to pension plans. *See VFS Fin.*, 73 F. Supp. 3d at 347 n.8 (explaining that *Merrill* was "easily distinguished" because it involved pension plans, which, unlike individual retirement accounts, are covered by ERISA's anti-alienation provision). And again, Office Create did not make any preemption arguments in its briefing.

7

prevails on that argument, then Office Create cannot reach the funds while they are held by the plan administrator. But if Office Create is correct, then the section 5205(c)(5) exception applies, and any funds that meet the criteria set forth in that exception may be used to satisfy the judgment.

Grossman contends that the retirement plan adopted by Defender Care dba E-Partners LLC is an ERISA-qualified plan. Doc. 65 at 5. The stated purpose of the plan is to provide retirement benefits to eligible employees. Doc. 66-1 § 1.1.3. The plan also provides:

> The right of any Participant or his Beneficiary in any distribution hereunder or to any Account shall not be subject to alienation, assignment, or transfer, voluntarily or involuntarily, by operation of law or otherwise, except as may be expressly permitted herein. No Participant shall assign, transfer, or dispose of such right, nor shall any such right be subjected to attachment, execution, garnishment, sequestration, or other legal, equitable, or other process.

*Id.* § 3.11.5. Furthermore, Grossman asserts that Defender Care dba E-Partners LLC is the sponsor of the retirement plan and the retirement accounts at issue, "which exist for the benefit of the Retirement Plan and the participants in the plan." Doc. 65 at 6. And Grossman maintains that he is just one of multiple participants in the plan. *Id.*

In response, Office Create insists that the retirement accounts are not ERISA-qualified plans because they cover only Grossman and his wife. Doc. 67 at 4. Office Create points to the last page of the plan's adoption agreement, which is signed by Grossman and his wife. *Id.* (citing Doc. 66-2 at 57). According to Office Create, this means that Grossman and his wife are the only individuals who have executed an adoption agreement—which is required to participate in the plan. *Id.* at 4–5 (citing Doc. 66-1 at 16, 21).

The Court fails to see how the adoption agreement compels that conclusion. Grossman and his wife appear to have signed the adoption agreement in their respective roles as president and vice president of E-Partners. The line preceding their signatures

indicates that the company "hereby adopts the Plan." Doc. 66-2 at 57. But it does not necessarily follow that no other individuals signed an adoption agreement in their capacity as employees.[5]

Furthermore, Grossman has submitted documents indicating that the plan has additional participants. For one, there are copies of Form 5500, which must be filed with the Department of Labor by employers who adopt and sponsor a retirement plan governed by ERISA. Doc. 82 ¶ 3. Grossman asserts that E-Partners has never filed a Form 5500-EZ, which is required for plans that do not provide benefits for anyone other than the owner and the owner's spouse. *Id.* ¶ 4. Instead, E-Partners has filed a Form 5500-SF each year since 2019. *Id.* ¶ 5. The 2019 version of that form states that there were sixteen total participants at the beginning of the plan year and seventeen total participants at the end of the plan year. Doc. 82-2 at 2. The 2020 version of the same form states that there were twenty total participants at the beginning of the plan year and nineteen total participants at the end of the plan year. Doc. 82-4 at 5; *see also id.* at 2 (summary annual report stating that nineteen people "were participants in or beneficiaries of the plan at the end of the plan year"). The 2022 version of the form states that there were fifteen total participants at the beginning of the plan year and eight total participants at the end of the plan year. Doc. 82-6 at 3. And the 2023 version of the form states that there were seven total participants at the beginning and end of the plan year. Doc. 82-7 at 2. On each year's form, the name of the plan is "Defender Care dba E-Partners LLC Defined Benefit Plan," and the plan sponsor is "Defender Care dba E-Partners LLC."

Grossman has also submitted an "Employee Census" for the 2019 plan year. Doc. 82-3. That document lists fifteen individuals—not including Grossman and his wife—as

---

[5] It is not even clear that an employee must sign an adoption agreement to participate. The provisions of the plan cited by Office Create state that eligible employees shall become participants "upon satisfying the eligibility requirements set forth in the Adoption Agreement" and that their participation begins "on the applicable Entry Date selected in the Adoption Agreement." Doc. 67 at 4–5 (quoting Doc. 66-1 §§ 2.1.1, 2.1.2.). Those provisions indicate that the adoption agreement sets out criteria for eligibility—not that an employee must sign an adoption agreement to become a participant.

new participants in the plan. *Id.* Three other individuals are listed as currently ineligible, but the form notes their "anticipated participation" beginning in 2020. *Id.* Additionally, for the year 2021, Grossman has submitted a "Participant Statement" for three individuals other than himself and his wife. Doc. 82-5 at 4–6. Those statements show the estimated retirement benefits for each participant. *Id.*

In response to these submissions, Office Create asserts that the exhibits do not relate to the Merrill Lynch accounts at issue but rather "pertain to accounts held at Lincoln Financial Group." Doc. 83 at 1. All the documents, however, refer to the Defender Care dba E-Partners LLC Defined Benefit Plan. Likewise, the entity named on all the retirement accounts Office Create seeks to restrain is either "Defender Care dba E-Partners LLC Defined Benefit Plan" or "Defender Care dba E-Partners LLC Retirement Plan." Doc. 67-3 at 23–36 (capitalization omitted).

Office Create also argues that Grossman's declaration contains "patently false statements" and that "there are valid concerns about the authenticity of the appended exhibits." Doc. 83 at 1. But Office Create does not meaningfully elaborate on those accusations. Again, the burden is on Office Create to show that the funds in the retirement accounts are not exempt. CPLR § 5222-a(d). Office Create has failed to do so.

### C. Cash Management Accounts

The parties' briefs pay significantly less attention to the two Merrill Lynch cash management accounts. Office Create asserts that these are not retirement accounts but rather are "merely brokerage accounts with a check writing option." Doc. 59 at 5. And contrary to Grossman's representation on the exemption claim form, the accounts do not appear to receive "payments from pensions and retirement accounts." *Id.* at 6; *see* Doc. 59-2 at 2–3.

The Court agrees with Office Create. There is no evidence before the Court to indicate that the cash management accounts qualify for the exemption that Grossman has

asserted. While the exemption claim form itself is prima facie evidence, it is not "conclusive proof of an entitlement to an exemption." *Midland Funding LLC v. Singleton*, 943 N.Y.S.2d 373, 378 (Dist. Ct. 2012). As one New York court has observed, the state legislature "could not possibly have intended to permit a person to obtain an exemption simply by checking a box on the Exemption Claim Form, signing that form and timely mailing [it] back to the judgment creditor's attorney." *Id.* Grossman has not provided the kind of evidence supporting the exempt status of the cash management accounts that he has for the retirement accounts.[6]

Accordingly, the Court finds that Grossman's exemption claim is deficient with respect to the cash management accounts. Any funds in those accounts—that is, the Merrill Lynch accounts ending in "1857" and "1877"—are not exempt from application to satisfaction of this Court's judgment.

## IV.   CONCLUSION

For the foregoing reasons, Office Create's objection to the exemption claim is GRANTED IN PART and DENIED IN PART, as follows:

With respect to the retirement accounts, the objection is DENIED. But the denial is without prejudice because, as noted above, CPLR section 5222-a(d) contemplates that the Court may hold a hearing before making this determination. If Office Create believes it can show—through documentation, examination of witnesses, or some other evidence—that the retirement accounts at issue are not ERISA-qualified accounts, it may

---

[6] In a footnote, Grossman argues that even if the cash management accounts are not retirement accounts, "it is of no moment" because the cash management accounts have no funds in them, "other than one which may have four cents in it." Doc. 65 at 6 n.3. The Court fails to see how this lack of funds means that the accounts qualify as exempt; if anything, it contradicts Grossman's assertion on the exemption claim form that the accounts contain "[p]ayments from pensions and retirement accounts." Doc. 59-2 at 3.

request such a hearing by April 23, 2024.  If Office Create fails to request a hearing by that date, its objection will be denied with prejudice.

With respect to the cash management accounts, the objection is GRANTED.  But Grossman may request a hearing to offer evidence that the cash management accounts qualify as exempt.  He also must do so by April 23, 2024.

It is SO ORDERED.

Dated:   April 16, 2024
        New York, New York

                                            EDGARDO RAMOS, U.S.D.J.